UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TRACEY BARKER, | : | Case No. 3:12-cv-357 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| MARCUS HERRON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER: (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 30); AND (2) DENYING DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 35)**

This civil action is before the Court on: (1) Plaintiff's motion for summary judgment (Doc. 30) and the parties' responsive memoranda (Docs. 34, 40); and (2) Defendants' cross-motion for partial summary judgment (Doc. 35) and the parties' responsive memoranda (Docs. 37, 41).

## I. BACKGROUND FACTS

This case arises out of an automobile accident that occurred on March 19, 2012 in Clark County, Ohio. Plaintiff alleges that Defendants Marcus Herron, Apollo Transfer, Inc., and Apollo Logistics, LLC (collectively, "Apollo") are liable for Defendant Herron's negligent operation of the truck. Conversely, Defendants maintain that Plaintiff's failure to maintain an assured clear distance ahead and/or keep a proper lookout was the sole proximate cause of the accident.

## II. PLAINTIFF'S UNDISPUTED FACTS[1]

1. Marcus Herron began working for "Apollo" in February 2012, one month before this crash, which occurred on the night of March 19, 2012. (Doc. 26 at 14-15). Herron was an "independent contractor acting within the course and scope of his agreement with Defendant Apollo Logistics, L.L.C." ("Apollo"). (Doc. 3 at ¶ 2). Plaintiff and Herron were operating vehicles on Urbana Road in Clark County, Ohio on March 19, 2012. (*Id.* at ¶ 1).

2. Marcus Herron was sent by Apollo to the International Harvester plant on Urbana Road multiple times, including on the date of the crash. (Doc. 26 at 13-14).

3. Apollo provided Marcus Herron with transportation to and from the International Harvester plant. Apollo would provide either a rented vehicle or another employee who would drive Mr. Herron to the plant. (Doc. 26 at 15).

4. On the night of the crash Mr. Herron was to drive a truck from the International Harvester plant to a "Morgan body plant" in Pennsylvania. (Doc. 26 at 16).

5. Mr. Herron was required by Apollo to fill out paperwork, both before and after each trip. This paperwork was faxed to Apollo's office. (Doc. 26 at 37).

6. Mr. Herron was driving one truck on the night of the crash. With him were three colleagues who were also driving trucks for Apollo. (Doc. 26 at 19).

7. Leading the four trucks was a man named Ralph Strange. Mr. Strange also worked for Apollo and drove a "chase car" that the other drivers would follow. Mr. Strange was the "crew leader" and the other drivers were required to follow the route that Mr. Strange drove. (Doc. 26 at 19, 35, 43).

8. The truck Mr. Herron was driving on the night of the crash was only a cab and a chassis. There was no "box" on the back of the truck. As a result, the frame of the truck was exposed. The frame was two black steel beams which connected the cab with the back wheels. (Doc. 26 at 29- 30, Ex. 2).

9. The accident happened at approximately 9:30 at night. (Doc. 26 at 62).

10. There were no reflectors on the side of the black steel beams which made up the truck's frame. There were also no lights on the side of these black steel beams. (Doc. 26 at 30, 14).

---

[1] *See* Doc. 31 and Doc. 34, Ex. 4.

2

11. When the Apollo convoy left the International Harvester plant, Mr. Herron's truck was second in line, directly behind Mr. Strange's chase car.  (Doc. 26 at 43).

12. The convoy left the International Harvester plant and began travelling north on Urbana Road.  (Doc. 26 at 41).

13. Mr. Herron and the other Apollo drivers needed to travel southbound on Urbana Road to reach the interstate they would take to Pennsylvania.  (Doc. 26 at 41).

14. There were two ways for the drivers to reverse course.  They could have continued north a quarter mile on Urbana Road and turned at a stoplight.  They could also take a turn on Urbana Road through a median crossover.  Mr. Herron was aware of both options but made the turn because Ralph Strange chose that option for the group.  (Doc. 26 at 41-42).

15. The plan was for all five vehicles to make successive turns in the middle of Urbana Road.  (Doc. 26 at 44).

16. After Mr. Strange made his turn, Mr. Herron pulled into the median to make his turn.  Before making his turn, Mr. Herron saw Plaintiff Tracey Barker driving southbound on Urbana Road toward his position.  He did not know her distance from him, nor did he know how long before impact he saw her, nor did he know her speed.  Mr. Herron chose to turn in front of Plaintiff because "that road was pretty busy" and if he had not turned in front of her he would "sit there forever." (Doc. 26 at 47, 49, 50).

17. After turning in front of Plaintiff, Mr. Herron failed to complete his turn initially. He did not make the turn wide enough which forced him to attempt to back up his truck to complete the turn.  As a result, he stopped his truck across both southbound lanes of Urbana Road to put his truck in reverse.  (Doc. 16 at 46, 57).

18. While Mr. Herron's truck was stopped across Urbana Road and "in between gears," Plaintiff's car hit Mr. Herron's truck.  (Doc. 26 at 46-47).

19. Mr. Herron acknowledged that he had a duty to yield to oncoming traffic, including Plaintiff.  (Doc. 26 at 53).

### III.    DEFENDANTS' UNDISPUTED FACTS[2]

1. Plaintiff drove southbound on Urbana Road, through the area where the collision occurred, everyday on her drive home.  (Doc. 33 at 50-51).

2. Southbound Urbana Road, where the collision occurred, is flat.  (Doc. 33 at 51).

3. There were no obstructions to Plaintiff's vision as she approached the area where the collision occurred.  (Doc. 33 at 51).

4. Plaintiff was aware that trucks frequently made u-turns in the area where the collision occurred.  (Doc. 33 at 51).

5. The posted speed limit on southbound Urbana Road where the collision occurred is 55 m.p.h.  At the time of the collision, Plaintiff was traveling between 55 and 57 m.p.h.  (Doc. 33 at 52).

6. Plaintiff did not apply her brakes or slow down prior to striking the truck operated by Marcus Herron.  (Doc. 33 at 55-56).

### IV.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

---

[2] *See* Doc. 35, Ex. 3 and Doc. 37.

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## V. ANALYSIS

Under Ohio law, "in an action based on negligence, each party is presumed to have exercised due care until proven otherwise." *Dixon v. Nowakowski*, No. L-98-1372, 1999 WL 652001, at *4 (Ohio App. Aug. 27, 1999). Liability based on alleged negligence requires proof of: (1) a duty running from the defendant to the plaintiff; (2) the defendant's breach of that duty; (3) damages sustained by the plaintiff; and (4) proximate causation of the damages by the defendant's breach of duty. *Loudin v. Radiology & Imaging Servs., Inc.*, 948 N.E.2d 944, 949 (Ohio 2011).

### A. Plaintiff's Motion for Summary Judgment

#### 1. Marcus Herron

Plaintiff alleges that she is entitled to judgment as a matter of law on the issue of liability because Mr. Herron failed to yield the right of way. Specifically, she alleges that Mr. Herron violated Ohio Revised Code Section 4511.42.

> The operator of a vehicle, streetcar, or trackless trolley intending to turn to the left *within an intersection* or into an alley, private road, or driveway shall yield the right of way to any vehicle, streetcar, or trackless trolley approaching from the opposite direction, whenever the approaching vehicle, streetcar, or trackless trolley is *within the intersection* or so close to the intersection, alley, private road, or driveway as to constitute an immediate hazard.

(emphasis added).

Defendants maintain that this section pertains to the duty to yield at intersections and because Herron pulled out of "a paved portion of the median"[3] this law does not apply to him. While the Court finds the text of the statute is broad enough to apply to Herron, even if Section 4511.42 does not apply, Ohio Revised Code Section 4511.44 does apply. It requires that a driver "about to enter or cross a highway from any place other than another roadway shall yield the right of way to all traffic approaching on the roadway to be entered or crossed." Ohio Revised Code § 4511.44. Defendants admit that Herron entered the roadway "through a paved portion of the median." (Doc. 34 at 6). Therefore, Herron was required to "yield the right of way to all traffic approaching on the roadway to be entered or crossed." Ohio Rev. Code § 4511.44.

Herron breached his duty to yield to Plaintiff. Herron understood that he had a duty to yield to Plaintiff. (Doc. 26 at 53). However, he turned in front of her car because "it was either take a chance or sit there forever." (*Id.* at 50). His decision to make that turn, knowing that Plaintiff was approaching, was a breach of his duty to yield her right of way which makes him negligent as a matter of law.

However, Mr. Herron's negligence does not equate to liability *per se*. Establishing liability requires negligence *per se* along with a showing of proximate cause. *Chambers v. St. Mary's School*, 697 N.E.2d 198, 200-201 (Ohio 1998). In order for a negligent act to cause injury, it must be the proximate and direct cause. The direct cause

---

[3] Median is defined as the area between two roadways. Ohio Revised Code § 4511.01(NNN).

6

is the cause in fact, without which the injury would not have occurred.  *Ackinson v. Anchor Packing Co.*, 897 N.E.2d 1118, 1128 (Ohio 2008).  The action must also be a proximate cause, the natural and probable cause of the injury.  *Strother v. Hutchinson*, 423 N.E.2d 467, 470-71 (Ohio 1981).  In other words, it must be foreseeable.  *Id*. Foreseeability does not require that the particular injury suffered was reasonably foreseeable, only that the injury was "closely related to the danger created by the original conduct."  *Id.*  "[P]roximate cause is generally established where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result that would not have taken place without the act."  *Devonshire v. Johnston Group First Advisors*, 166 Fed.Appx. 811, 813 (6th Cir. 2006).

The undisputed facts indicate that Herron pulled out in front of Plaintiff, fully aware that she was approaching. (Doc. 26 at 47).  He then began to turn in front of her in an attempt to join the southbound lanes of Urban Road.  (*Id*. at 45-46).  Because Herron misjudged the turn and turned too wide, Herron's truck blocked both lanes.  (*Id.* at 46).  Had Herron yielded to Plaintiff, his truck would not have been across both lanes of traffic and Plaintiff never would have collided with his truck.  The accident would not have taken place without Mr. Herron's negligent entrance into the southbound lanes of Urbana Road.  However, Defendants maintain that there is a genuine issue of material fact on the issue of proximate cause because, as explained *infra* at Section V.B, Plaintiff was also negligent, and her negligence was the intervening and superseding cause of the accident.

7

While the Court finds that the undisputed facts overwhelmingly support a finding that Herron was negligent, the Court cannot, as a matter of law, determine that Mr. Herron's negligence was the sole proximate cause of the injury and therefore cannot find Defendants liable as a matter of law.

### 2. *Apollo*

"Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of *respondeat superior*." *Clark v. Southview Hosp. & Family Health Ctr.*, 628 N.E.2d 46, 48 (Ohio 1994). The doctrine of liability depends on the existence of control by a principal (or master) over an agent (or servant). *Hanson v. Kynast*, 494 N.E.2d 1091, 1095 (Ohio 1986).[4] "For the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both, in separate actions, as a judgment against one is no bar to an action or judgment against the other until one judgment is satisfied." *Losito v. Kruse*, 24 N.E.2d 705, 707 (Ohio 1940).[5]

It is fundamental that in order for Apollo to be held vicariously liable for Mr. Herron's alleged negligence, a principal and agent or master and servant relationship must exist. One indicator is the amount of control exercised by the party contracting the work. If the "mode and manner" of doing the actual work are not under the control of the

---

[4] "The degree of control necessary to establish agency has not been clearly defined. *Id*.

[5] *See also State ex rel. Flagg v. Bedford*, 218 N.E.2d 601, 604 (Ohio 1966) ("This court follows the rule that until the injured party receives full satisfaction, he may sue either the servant, who is primarily liable, or the master, who is secondarily liable, and a mere judgment obtained against the former is not a bar to an action or judgment against the latter").

8

contracting party, who is interested only in obtaining the end result, the relationship cannot involve *respondeat superior*. *Albain v. Flower Hosp.*, 553 N.E.2d 1038, 1043 (Ohio 1990).

Mr. Herron had worked for Apollo for about one month before this accident. (Doc. 26 at 14-15). Apollo told him which trucks to drive, where to go to pick up the trucks he would be driving, and where to drop off the trucks he picks up. (*Id.* at 13-14, 17-18). Mr. Herron was required to fill out certain paperwork before and after each trip for Apollo. (*Id.* at 20). Mr. Herron drove a route that was set by an Apollo employee driving in front of him. (*Id.* at 19). Apollo even provided Mr. Herron's transportation to and from his pick-up locations, either by sending an Apollo employee to his home to pick him up or by paying all of the expenses (including gas and tolls) to rent Mr. Herron a car that he could drive to the pick-up point. (*Id.* at 15). Mr. Herron claimed that he had discretion in deciding whether or not to accept a specific job. (*Id.* at 34). However, one month after his accident, Apollo fired Mr. Herron for not accepting enough jobs. (*Id.* at 65-66).[6]

---

[6] The degree of an employer's control determines whether or not an employee is an independent contractor. For example, in *Harmon v. Schnurmacher*, 616 N.E.2d 591, 594-595 (Ohio App. 1992), the court found that a home-care nurse was an employee where the nurse worked only for one employer, the employer retained the right to fire the nurse, the nurse was engaged in long-term employment for the employer, and the employer retained the right to tell the nurse to do her job differently if he so desired. Similarly, Mr. Herron drove trucks only for Apollo (Doc. 26 at 6), Apollo retained the right to fire Mr. Herron and exercised that right when he did not work often enough (*Id.* at 65-66), and Apollo directed Mr. Herron how to fill out paperwork and dispatched a supervisor to take Mr. Herron to job sites and lead him to drop-off points (*Id.* at 15, 20).

9

If the facts are undisputed, the decision of whether or not a worker was an employee can properly be made by the court at the summary judgment stage. *Bostic v. Connor*, 524 N.E.2d 881, 882 (Ohio 1988). Here, the facts support a finding that Herron was an employee and Apollo does not contest the allegation that Mr. Herron was in fact its employee. Therefore, Apollo is vicariously liable for his torts.

**B. Defendants' Motion for Summary Judgment**

Defendants maintain that the sole proximate cause of the accident was Plaintiff's failure to maintain an assured clear distance ahead and/or failure to keep a proper lookout. Defendants acknowledge that viewing the facts in the light most favorable to Plaintiff, there is a genuine issue of material fact regarding the issue of proximate cause. However, Defendants maintain that the undisputed facts demonstrate that Plaintiff was both negligent *per se* and negligent in the operation of her motor vehicle.

*1. Assured Clear Distance*

Ohio's Assured Clear Distance Ahead statute reads:

> No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.

Ohio Revised Code § 4511.21(A). A violation of this statute depends on whether there is evidence that the driver collided with an object which: (1) was ahead of him in his path of

travel; (2) was stationary or moving in the same direction as the driver; (3) did not suddenly appear in the driver's path; and (4) was reasonably discernible. *Ziegler v. Wendel Poultry Serv., Inc.*, 615 N.E.2d 1022, 1026 (Ohio 1993). However, "[w]here conflicting evidence is presented as to any of the elements necessary to establish a violation of the statute, a jury question is created." *Id.* Plaintiff admits the first two prongs are satisfied, but claims that there is conflicting evidence as to the third and fourth elements.

With respect to the third element, Defendants claim that the truck driven by Mr. Herron did not suddenly appear in Plaintiff's path. "An object suddenly appears in the driver's path if the assured clear distance was sufficiently cut down or lessened by the entrance into the driver's line of travel of some obstruction which rendered him unable, in the exercise of ordinary care, to avoid colliding with such obstruction." *Shooter v. Perella*, No. L-07-1066, 2007 Ohio App. LEXIS 5354, at ¶ 21 (Ohio App. Nov. 16, 2007). A driver cannot claim that another vehicle suddenly appeared in her path of travel if the object struck was discernible for a time sufficient to allow the driver to avoid it with the exercise of reasonable care. *Coronet Ins. Co. v. Richard*, 602 N.E.2d 735, 739 (Ohio App. 1991). The touchstone of this analysis is whether the driver had a "reasonable opportunity to stop her vehicle." *Crummet v. Corbin*, 475 F.2d 815, 819 (6th Cir. 1973).[7]

---

[7] The sudden appearance of an object in the path of a driver has long been understood as a defense to liability under the assured clear distance rule. *Cox v. Polster*, 188 N.E.2d 421, 423 (Ohio 1963).

11

Defendants allege that Plaintiff saw Mr. Herron's truck "as a solid stationary object in the roadway" (Doc. 34 at 4), but Plaintiff maintains that she did not see Mr. Herron's truck until he was "[r]ight in front of me " or "less than one car length away." (Doc. 33 at 53-54). Ralph Strange alleged that Herron's truck was not "stationary," but rather Herron was backing his truck up at the time of the accident and had backed up "maybe ten feet." (Doc. 39 at 30). According to Strange, "it's pitch black in this place." (*Id.* at 34). Further, nothing in Mr. Herron's testimony suggests that his truck was stopped for minutes, only the length of time he needed to put his truck into gear. (Doc. 26 at 46-47). Mr. Herron's testimony does suggest that he stopped with his truck completely blocking both of the southbound lanes of Urbana Road which would constitute an "unnatural" stop. (*Id.* at 57). *See Didier v. Johns*, 684 N.E.2d 337, 341 (Ohio App. 1996) (citing with approval a Tennessee case which held that a jury question existed when the vehicle that was hit stopped in an "unnatural" manner). This Court is not in the position to make a factual determination of whether Plaintiff's opportunity to stop was reasonable. There is insufficient and conflicting evidence about when Mr. Herron's truck appeared in Plaintiff's lane.

With respect to the fourth element, whether the truck was easily discernible, objects cannot be presumed to be discernible simply because of their large size. *McFadden v. Elmer C. Breuer Transp. Co.*, 103 N.E.2d 385, 389-390 (Ohio 1952).[8]

---

[8] Defendants also maintain that the truck was reasonably discernible because "an exposed gas tank and exhaust system…were silver and shiny." (Doc. 35 at 5). However, in *McFadden*, the

12

Moreover, objects entering the path of the driver from the side of the road present the most difficult applications of the assured clear distance rule. *Id.* at 388.

It is undisputed that Mr. Herron's truck did not have a trailer or a box on the back. (Doc. 26 at 29). Plaintiff maintains that the side of the black frame of the truck had no lights, reflectors, or markings. (Doc. 26 at 30). Additionally, the steel beams that made up the black frame were only the height of a truck tire, so the truck bed was not at eye level at the time of the 9:30 p.m. accident (*Id.*, Ex. 2). Defendants, however, maintain that Mr. Herron's truck was illuminated by the three Apollo trucks. (Doc. 39 at 56). While Mr. Herron testified that he saw Plaintiff "quite a distance" away, he admitted that he does not know how long he observed Plaintiff's car before beginning his turn, he did not know how far away her car was from his truck when he began his turn, and he cannot estimate Plaintiff's speed. (Doc. 26 at 55-56). *See also Junge v. Brothers*, 475 N.E.2d 477, 480 (Ohio 1985) (jury questions exist on whether an overturned semi-truck was reasonably discernible at night). Therefore, whether the truck was reasonably discernible is a disputed issue of fact.

Accordingly, the Court finds that this conflicting evidence creates a jury question as to the third and fourth elements of the assured clear distance doctrine.

### 2. *Ordinary Care*

Next, Defendants maintain that Plaintiff was the intervening and superseding cause of the accident because she failed to use ordinary care.

---

Court found that whether a large roll of steel that fell into the road was discernible because there was "a shiny part of the steel and a dark part of the steel" was a jury question. *Id*. at 390.

13

Plaintiff is required to use ordinary care in the operation of her automobile. Specifically, Plaintiff has the duty to maintain a proper lookout ahead. *See League v. Scholz*, No. C-75572, 1976 Ohio App. LEXIS 7739, at *10 (Ohio App. 1976).[9] A motorist who has the right of way forfeits that right if she fails to drive in a lawful manner. *Beers v. Wills*, 179 N.E.2d 57, 59 (Ohio 1962). To proceed in a lawful manner, a person must comply with Ohio traffic laws. *Vavrina v. Greczanik*, 318 N.E.2d 408, 414 (Ohio App. 1974).

In addition to failing to maintain an assured clear distance, Defendants argue that Plaintiff was traveling at or above the speed limit, in an area where she knew trucks turn from northbound Urbana Road to southbound Urbana Road through the paved portion of the median, and was not looking where she was driving immediately prior to driving into Mr. Herron's truck.[10] (Doc. 33 at 50-55). Additionally, Defendants maintain that Plaintiff saw the truck prior to impact, but was traveling so fast and was so close to the truck that she did not have time to apply her brakes or take any action to avoid the impact. (*Id.* at 54-56). Conversely, Plaintiff maintains that she briefly glanced down to

---

[9] In *League v. Scholz*, No. C-75572, 1076 Ohio App. LEXIS 7739, at *4 (Ohio App. 1976), the Court found that evidence of the failure to maintain a proper lookout created a jury question. The question to be resolved by the jury was whether, instead of looking away, "a reasonably prudent person would, on the contrary, have been maintaining vigilance in the line of the forward progress of his automobile." *Id.*

[10] Plaintiff admitted she was traveling at or above the speed limit. (Doc. 33 at 52-53, 55). However, "a fact-finder is not compelled as a matter of law to conclude that driving in excess of the speed limit…amounts to negligence per se." *Lewicky v. Accurate Blg. Systems, Inc.*, No. 72906, 1998 WL 842072 (Ohio App. Dec. 3, 1998). "The question of whether [a driver's] speed was reasonable is a question of fact for the jury." *Smith v. Pee Pee Twp.*, No. 2:04cv298, 2005 WL 2211260 (S.D. Ohio Sept. 7, 2005).

14

gauge her speed and when she saw Herron's truck, she was less than one car length away. (Doc. 33 at 53-55). Again, the Court finds that disputed issues of fact predominate and therefore whether Plaintiff was exercising ordinary care is a jury question.

While the weight of the evidence supports a finding that Defendants were both negligent and per se liable, reasonable minds could differ as to whether Plaintiff's alleged negligence caused the accident, whether Defendants' negligence caused the accident, or both. As a result, under the facts and circumstances of this case, the Court concludes that issues of fact remain regarding causation, and possibly comparative negligence, and such issues are to be decided by the jury.

## VI. CONCLUSION

Accordingly, for the foregoing reasons:

(1) Plaintiff's motion for summary judgment (Doc. 30) is **DENIED**; and

(2) Defendants' motion for partial summary judgment (Doc. 35) is **DENIED**.

**IT IS SO ORDERED**.

Date: 11/15/13                                             */s/ Timothy S. Black*
                                                                  Timothy S. Black
                                                                  United States District Judge